### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JESSICA LEIGH JOHNSON,** | : | |
| *Plaintiff*, | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **FEDERAL BUREAU OF INVESTIGATION,** | : | **No. 14-1720** |
| *Defendant*. | : | |

### MEMORANDUM

PRATTER, J. SEPTEMBER 20, 2016

#### I.   INTRODUCTION

The Federal Bureau of Investigation ("FBI") moves for reconsideration of the Court's

May 12, 2016 Order ("May 12 Order") denying the FBI's Renewed Motion for Summary

Judgment and granting Jessica Leigh Johnson's Renewed Motion for Summary Judgment.  The

May 12 Order directed that (1) the FBI disclose all documents responsive to Ms. Johnson's

Freedom of Information Act ("FOIA") request to Ms. Johnson's counsel, (2) Ms. Johnson's

counsel submit to the Court any documents counsel wished to disclose to Ms. Johnson or others,

and (3) the FBI would have 10 days to provide the Court with specific objections to such

proposed disclosures.  The Court will vacate the May 12 Order and, upon reconsideration, grant

the FBI's Renewed Motion for Summary Judgment.

#### II.   FACTUAL AND PROCEDURAL BACKGROUND[1]

Although the facts of this case were articulated in the Court's May 12, 2016 Opinion,

they are included here for ease of reference.

---

[1] The facts are undisputed unless expressly noted.

1

In October 2004, after a federal trial in the Northern District of Indiana, Odell Corley was convicted of a number of crimes, including capital murder and attempted armed bank robbery, in connection with an August 2002 attempted robbery of the First State Bank of Porter, Pines Branch (the "Pines Bank") in Indiana.  In December 2014, Mr. Corley was sentenced to death on the capital murder convictions and to imprisonment for the other convictions.  Mr. Corley's convictions and sentences were affirmed on appeal.

In January 2010, again in the Northern District of Indiana, Mr. Corley filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentences.  The § 2255 motion remains active.

Ms. Johnson is an investigator for the Federal Community Defender Office in Philadelphia.  That office represents Mr. Corley in his post-conviction litigation in Indiana.  In connection with Mr. Corley's § 2255 motion, Ms. Johnson submitted a FOIA request to the FBI Laboratory Division for "any and all records" concerning the FBI's investigation of the attempted robbery of the Pines Bank.  The FBI searched its Central Records System for responsive records and informed Ms. Johnson that the requested material is located in an investigative file exempt from disclosure pursuant to FOIA Exemption 7(A).[2]  Ms. Johnson appealed the FBI's decision to the Department of Justice Office of Information Policy, which remanded Ms. Johnson's request to the FBI for further processing of the responsive records.  As a result, the FBI reopened Ms. Johnson's FOIA request and notified her that it had located approximately 5,827 pages of potentially responsive records.  After Ms. Johnson committed to

---

[2] Exemption 7(A) permits an agency to withhold records "compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).

paying the estimated costs for the requested material, the FBI located additional responsive materials comprised of 23 electronic media items.

The FBI informed Ms. Johnson that it had reviewed 856 pages of potentially responsive records and had decided to release 95 pages in part, with certain information exempted from disclosure pursuant to FOIA Exemptions 7(A) and 7(E).[3]  The FBI stated that the material Ms. Johnson had requested was located in an investigative file exempt from disclosure pursuant to FOIA Exemption 7(A).  The FBI then made its second and final release of records to Ms. Johnson.  The FBI said it had reviewed 5,059 pages of potentially responsive records and had decided to release 86 pages in part, with certain information exempted from disclosure pursuant to FOIA Exemptions 7(A) and 7(E).

Ms. Johnson again appealed to the Office of Information Policy, which affirmed the FBI's actions and found that the FBI properly withheld certain information that, per the Office of Information Policy, was protected from disclosure under FOIA Exemption 7(A).

Ms. Johnson then filed the complaint here.  Thereafter, the parties filed cross-motions for summary judgment.  The FBI cited Exemptions 3, 5, 6, 7(A), 7(D), and 7(E) as the bases for its positions, and produced declarations by two agents familiar with the FBI's records and record-keeping practices (the "Hardy Declaration" and the "Grist Declaration") to that effect. Ms. Johnson argued that the FBI's invocation of Exemption 7(A) as a categorical exemption was inappropriate, and that the FBI failed to connect particular documents or types of documents to the other, particular claimed exemptions, so it could not satisfy its burden under FOIA.

---

[3] Exemption 7(E) exempts "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions, if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

The Court denied both motions for summary judgment without prejudice.  *See Johnson v. F.B.I.*, 118 F. Supp. 3d 784, 800 (E.D. Pa. 2015).  As to Exemption 7(A) the Court concluded:

> Although Exemption 7(A) may be applied categorically, the FBI has not yet proven that it may be applied categorically to the materials at issue in this case. Here, in light of the fact that Mr. Corley has already stood trial based on evidence likely contained in the FBI's files, Exemption 7(A) is not available to bar the production of all non-public-source material. Rather, the FBI should justify the applicability of Exemption 7(A) (and/or any other claimed FOIA exemption) to each document that it intends to withhold by demonstrating that the protectable information in the document is not already part of the public domain by virtue of use at Mr. Corley's trial.

*Id.*  The Court ordered the FBI to "either release the responsive materials to Ms. Johnson or provide the Court with supplemental affidavits or declarations justifying its decision to withhold responsive materials."  *Id.*

Thereafter, the FBI – in coordination with the United States Attorney's Office for the Northern District of Indiana – provided Ms. Johnson with unredacted copies of the entire contents of the discovery file from Mr. Corley's criminal case (the "Discovery File").  The Discovery File contained 4,045 pages of documents.  Having received only those documents which originated in the United States Attorney's Office for the Northern District of Indiana, Ms. Johnson filed a Renewed Motion for Summary Judgment as to her initial FOIA request. Likewise, the FBI filed a Renewed Motion for Summary Judgment which included a Supplemental Declaration of David M. Hardy ("Second Hardy Declaration").  On May 12, 2016, the Court denied the FBI's Renewed Motion for Summary Judgment and granted Ms. Johnson's Renewed Motion for Summary Judgment and issued the May 12 Order.  The FBI then filed its Motion for Reconsideration.  The Court immediately issued an Order ("May 23 Order") which, in part, stayed all deadlines contained in the May 12 Order and directed the FBI to file an additional affidavit specifying the documents in its investigation file covered by the FBI's

4

claimed exemptions other than Exemption 7(A).  On June 20, 2016, the FBI filed its

Supplemental Memorandum in Further Support of its Renewed Motion for Summary Judgment,

which included a Third Declaration of David M. Hardy ("Third Hardy Declaration").

### III.    LEGAL STANDARD

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact

or to present newly discovered evidence."  *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.

1985), *cert. denied,* 476 U.S. 1171 (1986) (internal citations omitted).  A court should grant a

motion for reconsideration only "if the moving party establishes one of three grounds:  (1) there

is newly available evidence; (2) an intervening change in the controlling law; or (3) there is a

need to correct a clear error of law or prevent manifest injustice."  *Drake v. Steamfitters Local*

*Union No. 420*, No. 97–585, 1998 WL 564486, at *3 (E.D. Pa. Sept. 3, 1998) (citing *Smith v.*

*City of Chester,* 155 F.R.D. 95, 96–97 (E.D. Pa. 1994)).  *See also Max's Seafood Café, by Lou–*

*Ann, Inc., v. Quinteros,* 176 F.3d 669, 677 (3d Cir. 1999).  "Because federal courts have a strong

interest in finality of judgments, motions for reconsideration should be granted sparingly."

*Continental Casualty Co. v. Diversified Indus., Inc.*, 884 F. Supp. 937, 943 (E.D. Pa. 1995).  A

motion for reconsideration should not raise additional arguments that the movant "could have

made but neglected to make prior to judgment."  *Holsworth v. Berg,* No. 05–1116, 2005 WL

1799409, at *3 (E.D. Pa. Jul. 26, 2005) (quoting *U.S. v. Jasin*, 292 F. Supp. 2d 670, 677

(E.D. Pa. 2003)).

### IV.    DISCUSSION

A thorough description and analysis of the parties' initial arguments in this dispute

regarding Ms. Johnson's FOIA request can be found in the Court's previous opinions.  *See*

*Johnson v. F.B.I.*, No. 14-1720, 2016 WL 2755584, at *4-5 (E.D. Pa. May 12, 2016); *Johnson*,

118 F. Supp. 3d at 791-800.  For present purposes, then, the Court will focus on the arguments asserted by the parties in their renewed motions.

The FBI makes three arguments in support of its Motion for Reconsideration.  First, the FBI argues that the Court's May 12 Order improperly directed the FBI to disclose responsive documents to Plaintiff's counsel.  The FBI maintains that if the Court determines that the FBI has not sufficiently explained its withholding decisions, then the proper remedy under FOIA is to order the FBI to provide more detailed explanations, not order the FBI to disclose information to Ms. Johnson's counsel with special restrictions.  Second, the FBI argues that the Court improperly rejected as inadequate its categorical descriptions of records as subject to Exemption 7(A).  The FBI asserts that it has met its burden to group documents "in relevant categories that are sufficiently distinct to allow a court to grasp 'how each . . . category of documents, if disclosed, would interfere with the investigation.'  The hallmark of an acceptable . . . category is thus that it is *functional*; it allows the court to trace a rational link between the nature of the document and the alleged likely interference."  *Bevis v. Dep't of State*, 801 F.2d 1386, 1389 (D.C. Cir.) (quoting *Crooker v. Bureau of Alcohol, Tobacco and Firearms*, 789 F.2d 64, 67 (D.C. Cir. 1986) (internal citation omitted) (emphasis in original)).  Third, the FBI argues the Court did not consider each of the FBI's claimed exemptions, including Exemption 3, which protects documents that are prohibited from disclosure by statute.

In opposing the FBI's Motion for Reconsideration, Ms. Johnson argues that the Court was correct in finding that the FBI did not meet its burden to justify its claimed exceptions.  While Ms. Johnson does not dispute the FBI's contention that FOIA disfavors limited disclosure of information, she asserts that that remedy should be for full public disclosure of all responsive documents.  Further, in response to the Third Hardy Declaration, which contains a document-by-

document description of each document withheld pursuant to any FOIA exemption, Ms. Johnson

no longer challenges the FBI's claimed exemptions over seven document categories.[4]

> A.      EXEMPTION 7(A)

Exemption 7(A) permits an agency to withhold records "compiled for law enforcement

purposes, but only to the extent that the production of such law enforcement records or

information . . . could reasonably be expected to interfere with enforcement proceedings."

5 U.S.C. § 552(b)(7)(A).  "To fit within Exemption 7(A), the government must show that (1) a

law enforcement proceeding is pending or prospective and (2) release of the information could

reasonably be expected to cause some articulable harm."  *Manna v. U.S. Dep't of Justice*, 51

F.3d 1158, 1164 (3d Cir. 1995) (citing *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224

(1978)).  The Court has already determined that the FBI has shown that Exemption 7(A) applies

to the undisclosed documents in its investigative file.  *See Johnson*, 2016 WL 2755584, at *5.  In

previously denying the FBI's Motion for Summary Judgment, the Court found that the level of

detail in the First and Second Hardy Declarations was insufficient to sustain the FBI's burden to

justify the claimed exemption.

With the Third Hardy Declaration, which contains a document-by-document index

purporting to describe each document the FBI has withheld from Ms. Johnson, the Court is now

satisfied that it has "a clear explanation of why each document . . . is putatively withheld from

disclosure."  *See Robinson v. F.B.I.*, No. 06-3359, 2008 WL 2563212, at *5 (E.D. Pa. Feb. 14,

2008) (citing *Davin v. U.S. Dep't of Justice*, 68 F.3d 1049, 1050 (3d Cir. 1995)).  The index,

along with the FBI's representation in the Second Hardy Declaration that anything contained

---

[4] These categories are:  (1) documents related to a federal grand jury or grand jury subpoenas issued to a third party, (2) background checks of third-parties, (3) NCIC reports on third parties, (4) driving record and criminal history reports on third parties, (5) computer printouts of pen register activities, (6) computer printouts of FBI record checks of third parties, and (7) sealed court records.

within its investigative file that would have entered the public domain during the prosecution of Mr. Corley has been provided to Ms. Johnson in the Discovery File, is sufficient for the FBI to meet its burden under FOIA.

> B.      EXEMPTIONS 3, 5, 6, 7(C), 7(D), & 7(E)

The FBI has asserted multiple FOIA exemptions over most documents listed on its index. In previously denying the FBI's Renewed Motion for Summary Judgment, the Court did not ignore these exceptions, but rather found the FBI failed "to specifically describe the withheld documents and their relation to the claimed exemptions." *Johnson*, 2016 WL 2755584, at \*5. The FBI had previously not identified the withheld information with sufficient detail such that the Court could determine whether its claimed exceptions were justified or not.  In light of the Third Hardy Declaration, the Court can only assume it has made itself and its concerns clear enough to the FBI so that, with the Third Hardy Declaration, the Court now finds that the FBI has met its burden to set forth sufficient detail connecting specific documents and document categories with the claimed exceptions.

> 1.      Exemption 3

Exemption 3 exempts from disclosure information that is "specifically exempted from discovery by statute . . . provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3).  The FBI argues that Exemption 3 applies with respect to (1) grand jury information because of Federal Rule of Criminal Procedure 6(e), which establishes guidelines for maintaining the secrecy of proceedings before a federal grand jury, (2) information concerning court-ordered interceptions and recordings of telephone and vocal communications under Title

III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520, which exempts from disclosure many of the details regarding intercepts obtained pursuant to court order, and (3) pen register information specifically exempted pursuant to the Pen Register Act, 18 U.S.C. § 3123(d).  In light of the Third Hardy Declaration, the FBI has provided sufficient detail as to which documents were withheld pursuant to Exemption 3.

### 2.    Exemption 5

Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  Known as the "deliberative process privilege," the purpose of Exemption 5 is to prevent injury to the quality of agency decisions.  Information may be withheld under Exemption 5 only if it is both "predecisional" and "deliberative," meaning it precedes the decision or policy to which it relates and played a direct part in the decision-making process because it consists of recommendations or opinions on legal or policy matters, or reflects the give-and-take of the consultative process.  In light of the Third Hardy Declaration, the FBI has provided sufficient detail as to which documents were withheld pursuant to Exemption 5.

### 3.    Exemptions 6 and 7(C)

The FBI next cites Exemptions 6 and 7(C).  Exemption 6 exempts from disclosure "personnel and medical files and similar files when the disclosure of such information would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Exemption 7(C) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or

information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C).[5]

The FBI claims to have withheld 9 types of information under these Exemptions: (1) names and identifying information of FBI Special Agents and support personnel; (2) names and identifying information of third parties who provided information to the FBI; (3) names and identifying information of third parties merely mentioned in the criminal investigative file; (4) names and identifying information of third parties of investigative interest; (5) names and identifying information of non-FBI federal government personnel; (6) names and identifying information of local law enforcement personnel; (7) names and identifying information of third parties with a criminal record; (8) names and identifying information of third party victims; and (9) names and identifying information of commercial and financial institution personnel.

The FBI is correct that the release of such information risks the unwarranted invasion of personal privacy, and, in light of the Third Hardy Declaration, the FBI has provided sufficient detail as to which documents were withheld pursuant to Exemptions 6 and 7(C).

### 4.      Exemption 7(D)

Exemption 7(D) protects "records or information compiled for law enforcement purposes" but only to the extent that disclosure "could reasonably be expected to disclose the identity of a confidential source, including a State, local or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement agency conducting a lawful

---

[5] Although these exemptions contain an important distinction—Exemption 6 applies if releasing the information *would* invade someone's personal privacy, whereas Exemption 7(C) applies if such a release *could* reasonably be expected to invade privacy—the analysis is sufficiently similar to address them together.

national security intelligence investigation, information furnished by a confidential source."

5 U.S.C. § 552(b)(7)(D).

The FBI cites four types of information that were withheld under Exemption 7(D):

(1) confidential source symbol numbers; (2) confidential source file numbers; (3) names and

identifying information about, and information provided by, a source under express assurances of

confidentiality; and (4) names and identifying information provided by individuals under an

implied assurance of confidentiality.  In light of the Third Hardy Declaration, the FBI has

provided sufficient detail as to which documents were withheld pursuant to Exemption 7(D).[6]

> 5.      Exemption 7(E)

Finally, the FBI points to Exemption 7(E) as a basis for withholding documents.

Exemption 7(E) exempts "records or information compiled for law enforcement purposes, but

only to the extent that the production of such law enforcement records or information . . . would

disclose techniques and procedures for law enforcement investigations or prosecutions, or would

disclose guidelines for law enforcement investigations or prosecutions, if such disclosure could

reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).

The FBI cites 10 types of information that it withheld under Exemption 7(E):

(1) database information and printouts; (2) tactical information contained in operational plans;

---

[6] In formulating an example to show how a document withheld by the FBI could have lost the "connective tissue" between the document and the claimed exception, the Court previously suggested that a document withheld from production pursuant to Exemption 7(D) could lose its protected status if the relevant confidential informant publicly testified at Mr. Corley's trial. That was not a proper example.  "[A] government agency is not required to disclose the identity of a confidential source or information conveyed to the agency in confidence in a criminal investigation notwithstanding the possibility that the informant may have testified at a public trial."  *Parker v. Dep't of Justice*, 934 F.2d 375, 379 (D.C. Cir. 1991); *see also Lame v. U.S. Dep't of Justice*, 654 F.2d 917, 925 (3d Cir. 1981) ("[O]nce there has been an expressed or implied assurance of confidentiality, a subsequent release or publication by the government of a portion of the information does not negate the exemption for any of the information originally given.").

(3) statistical information contained in effectiveness rating forms pertaining to the investigation of the First Pines Bank; (4) information regarding targets, dates, and scope of surveillance; (5) collection and analysis of information; (6) information related to undercover operations; (7) information related to polygraphs; (8) monetary payments for investigative techniques; (9) computer analysis response team ("CART") reports and data; and (10) internal FBI secure fax number, email address, and web address.

Again, the FBI is correct that the release of such information may risk disclosing law enforcement techniques, and, in light of the Third Hardy Declaration, the FBI has provided sufficient detail as to which documents were withheld pursuant to Exemption 7(E).

C.    PUBLIC DOMAIN

"Under our public-domain doctrine, materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record." *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999). "[T]he logic of FOIA postulates that an exemption can serve no purpose once information—including sensitive law-enforcement intelligence—becomes public, [but] we must be confident that the information sought is truly public and that the requester receive no more than what is publicly available before we find a waiver." *Id.* at 555. Therefore, in order for the public domain exception to apply, "the party advocating disclosure bears the initial burden of production; for were it otherwise, the government would face the daunting task of proving a negative: that requested information had not been previously disclosed." *Id.* at 554. Thus, "a plaintiff asserting a claim of prior disclosure must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld." *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1279 (D.C. Cir. 1992).

Here, while Ms. Johnson did meet her initial burden by pointing to evidence that was introduced at Mr. Corley's trial, the FBI subsequently provided Ms. Johnson with the Discovery File.  The Court has no reason to question the FBI's representation that the Discovery File contained all documents that "would have been produced in discovery" or that would have been "made part of the public record at" Mr. Corley's trial.  Accordingly, the Court concludes that the FBI has provided Ms. Johnson with all documents she has proved are in the public domain.  Further, there is an absence of any demonstration on the part of Ms. Johnson to show less than good faith compliance with regard to the FBI's disclosure of documents.  Ms. Johnson has not provided a legal basis to conclude that the FBI must produce duplicative or redundant materials beyond or in addition to what the FBI has already provided in the Discovery File.  Therefore, the Court finds that the FBI has complied with its obligation to provide Ms. Johnson with responsive materials that are in the public domain.

Accordingly, upon further consideration, and in consideration of the Third Hardy Declaration,[7] the Court agrees with the FBI that it has met its obligations under FOIA and has satisfied its burden to justify its claimed exemptions.[8]

---

[7] The Court cannot avoid observing that if the FBI had been as thorough in its initial response to Ms. Johnson's claims and the Court's concerns, both the litigants and the Court may well have been able to save time and other resources.

[8] The Court's May 12 Order requiring restricted disclosure of responsive materials to Plaintiff's counsel, though perhaps analytically logical, was not actually a permissible option. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 ("It must be remembered that once there is disclosure, the information belongs to the general public.  There is no mechanism under FOIA for a protective order allowing only the requester to see whether the information bears out his theory, or for proscribing its general dissemination."); *F.B.I. v. Abramson*, 456 U.S. 615, 631 (1982) ("Congress . . . created a scheme of categorical exclusion . . . .").

## V.   CONCLUSION

For the reasons stated above, the Court will vacate its May 12, 2016 Order and grant

Defendant's Renewed Motion for Summary Judgment.

*          *          *

An appropriate order follows.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge