**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | No. 3:02-CR-116 |
| Respondent, | : | |
| | : | |
| **v.** | : | **CAPITAL § 2255** |
| | : | **PROCEEDINGS** |
| **ODELL CORLEY, a/k/a** | : | |
| **NASIH RA'ID,** | : | Hon. Theresa L. Springmann, |
| Movant. | : | Chief Judge |
| | : | |

**MOVANT'S REPLY IN SUPPORT OF MOTION**
**UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE,**
**OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY**

JENNIFER CHICCARINO
LEOR VELEANU
AYANNA WILLIAMS
Federal Community Defender Office
for the Eastern District of Pennsylvania
Capital Habeas Unit
601 Walnut Street, Suite 545West
Philadelphia, PA 19106
 (215) 928-0520

January 31, 2020

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................ 1

REQUEST FOR EVIDENTIARY HEARING............................................................................. 1

STATEMENT REGARDING ARGUMENTS RAISED IN THIS REPLY ................................. 2

ARGUMENT............................................................................................................................ 2

GROUND SEVEN: TRIAL COUNSEL DID NOT EFFECTIVELY DEVELOP AND
PRESENT MITIGATING EVIDENCE ......................................................................................... 2

    A.   Deficient Performance ...................................................................................... 3

    B.   Prejudice ........................................................................................................... 7

CONCLUSION......................................................................................................................... 8

## TABLE OF AUTHORITIES

**Federal Cases**

*Eddings v. Oklahoma*, 455 U.S. 104 (1982) ...................................................................... 4

*Faucett v. United States*, 872 F.3d 506 (7th Cir. 2017) ................................................. 1

*Kimmelman v. Morrison*, 477 U.S. 365 (1986) ................................................................ 6

*Pole v. Randolph*, 570 F.3d 922 (7th Cir. 2009) ............................................................ 6

*Porter v. McCollum*, 558 U.S. 30 (2009) .................................................................... 5, 7

*Rompilla v. Beard*, 545 U.S. 374 (2005) ..................................................................... 6, 7

*Unites States v. Barrett*, 797 F.3d 1207 (10th Cir. 2015) ........................................... 1-2

*Wiggins v. Smith*, 539 U.S. 510 (2003) .................................................................. 4, 5, 8

*Williams v. Taylor*, 529 U.S. 362 (2000) ................................................................... 5, 7

*Wong v. Belmontes*, 558 U.S. 15 (2009) ....................................................................... 5

*Woodson v. North Carolina*, 428 U.S. 280 (1976) ........................................................ 4

**Federal Statutes**

28 U.S.C. § 2255 .......................................................................................................... 1, 8

## PRELIMINARY STATEMENT

On January 19, 2010, Movant Nasih Ra'id filed a *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* ("*Motion*") (ECF No. 883). On June 18, 2018, Mr. Ra'id filed his *Memorandum of Law* in support of his § 2255 motion (ECF No. 976). The Government filed its *Response in Opposition* on October 1, 2019 ("*Response*") (ECF No. 986).  Mr. Ra'id now files this *Reply*.

As in the *Motion*, transcripts of the trial proceedings are cited as "Tr." followed by the volume and page number. Other proceedings are cited as "Tr." followed by the date of the proceeding and page number. Mr. Ra'id also cites a number of documents that are not part of the trial record but are proffered in support of this Motion. These documents are included in the *Appendix* filed on June 13, 2014 (ECF No. 924), and the *Supplemental Appendix* filed on February 2, 2015 (ECF No. 930), and are cited as "A" followed the page number.

Mr. Ra'id is referred to by name, and the United States of America is referred to as the Government. All other citations are either self-explanatory or are explained. All emphasis is supplied unless otherwise indicated.

## REQUEST FOR EVIDENTIARY HEARING

Under 28 U.S.C. § 2255(a), a federal conviction and sentence must be vacated if obtained in violation of the Constitution or laws of the United States. When a federal prisoner files a motion for post-conviction relief under 28 U.S.C. § 2255, an evidentiary hearing is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).  *See Faucett v. United States*, 872 F.3d 506, 512 (7th Cir. 2017); *see also Unites States v. Barrett*, 797 F.3d 1207, 1224 (10th Cir. 2015) ("[A]n evidentiary hearing is warranted" in a § 2255 case if "such a hearing could enable [the movant]

1

to prove the [motion's] factual allegations, which, if true, would entitle the [movant] to . . . relief." (quoting *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007))).

Mr. Ra'id requests an evidentiary hearing on Ground 7 of his § 2255 motion in its entirety. With respect to the remaining grounds for relief, Mr. Ra'id submits that these are legal claims, and a hearing on these claims should be limited to questioning trial counsel regarding their reasoning or lack thereof for not objecting to or raising these legal grounds at trial or on appeal.

## STATEMENT REGARDING ARGUMENTS RAISED IN THIS REPLY

Mr. Ra'id raised ten grounds for relief in his § 2255 motion In its *Response*, the Government raises several assertions with respect to Ground 7 that require specific replies.  Mr. Ra'id focuses below on replying to the Government's factual and legal assertions with respect to this claim for relief.  On the remaining claims, Mr. Ra'id relies on his initial motion and memorandum of law, which anticipated the assertions in the Government's *Response*.  Mr. Ra'id does not waive any claim raised in the motion.

## ARGUMENT

## GROUND SEVEN: TRIAL COUNSEL DID NOT EFFECTIVELY DEVELOP AND PRESENT MITIGATING EVIDENCE

Mr. Ra'id alleges that his Sixth Amendment right to the effective assistance of counsel was violated because his trial counsel failed to present available mitigating evidence. Trial counsel was obliged to conduct a thorough investigation for all reasonably available mitigation and to follow-up on the investigative leads.  Here, counsel failed to conduct a thorough investigation of Mr. Ra'id's life history and mishandled the investigation of his resulting mental health impairments.

The Government opposes an evidentiary hearing on this claim. However, the Government creates a factual dispute by inventing and assuming defense strategies without actually hearing from trial counsel – and in contradiction to trial counsel's own affidavits.  The Government also creates a factual dispute by arguing that "Corley's most humanizing characteristics in a plea for sympathy, is entirely contrary to any argument Corley makes now." *Response* at 40. A hearing is warranted so that Mr. Ra'id can present evidence demonstrating that there was no grand strategy to only focus on Mr. Ra'id's positive traits and avoid informing the jury about Mr. Ra'id traumatic upbringing. Had counsel presented a complete and accurate picture of Mr. Ra'id's background and social history, there is a reasonable probability that at least one juror would have voted for life.

### A.    Deficient Performance

At its core, the Government's main argument is that trial counsel focused on Mr. Ra'id's positive qualities, drawing the "jury's attention to Corley's most humanizing characteristics in a plea for sympathy, [which] is entirely contrary to any argument Corley makes now." *Response* at 40. The Government goes so far as to argue that "[t]he petition now attempts to dehumanize Corley and make him appear monstrous, in direct contradiction to the trial mitigation work." *Id.* at 43. The Government theorizes that "[p]resenting evidence of both a loving family who would miss him and evidence of a dysfunctional family traumatic enough to account for Corley's murderous actions would have been confusing to the jury and self-contradictory." *Id.* at 42.

This utter speculation by the Government makes clear that an evidentiary hearing is necessary to resolve factual disputes. Firstly, evidence of Mr. Ra'id's traumatic upbringing would not be "confusing" or "self-contradictory;" rather, it would have provided an accurate picture describing how Mr. Ra'id suffers from mental health impairments due to his history of trauma. Moreover, a full explanation of Mr. Ra'id's life history would have informed the jury

that Mr. Ra'id is a complicated individual who possesses many positive qualities as well as the pervasive effects of trauma and brain impairments. Secondly, the "strategy" which the Government attributes to trial counsel is unsupported by the record and contradicts the affidavits submitted by trial counsel.  A356 (Schlesinger); A351 (Theis).

The effects of Mr. Ra'id's traumatic life are exactly the type of "mitigating factors stemming from the diverse frailties of humankind" that jurors understand to be a basis for a sentence other than death. *Woodson v. North Carolina*, 428 U.S. 280, 304 (1976). The Eighth Amendment "requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death." *Id.* at 304. Evidence "of a difficult family history and of emotional disturbance is typically introduced by defendants in mitigation." *Eddings v. Oklahoma*, 455 U.S. 104, 115 (1982); *see also Wiggins v. Smith*, 539 U.S. 510, 535 (2003) ("Petitioner thus has the kind of troubled history we have declared relevant to assessing a defendant's moral culpability.").

Other than its own opinion, the Government's view that informing the jury of Mr. Ra'id's traumatic upbringing would be contradictory to the "positive traits" theory presented to the jury is illogical and unsupported by the record. Moreover, the Government's characterization of the "the current defense theory that Corley was such a sick and twisted individual due to family influences beyond his control that the jury should hold him less responsible for his murderous acts" is a shameful blaming of Mr. Ra'id himself for being sexually abused and physically and emotionally neglected as a child. Of course, such mitigation is relevant to Mr. Ra'id's moral culpability, and derisively mocking his childhood trauma as the cause of being a "sick and twisted individual" is a misunderstanding of mitigation.

4

The Government's *Response* suggests trial counsel conducted a thorough investigation and decided to focus on Mr. Ra'id's positive traits, and strategically avoided providing the jury with an explanation for Mr. Ra'id's negative behavior (which at that point in the proceedings, included finding Mr. Ra'id guilty of murder). However, there is no support for such a strategy in the record. Here, "counsel abandoned [his] investigation of [Petitioner's] background after having acquired only rudimentary knowledge of his history from a narrow set of sources." *Wiggins v. Smith*, 539 U.S. 510, 524; *see also Williams v. Taylor,* 529 U.S. 362, 396 (2000) (counsel's failure to obtain and introduce mitigating evidence "was not justified by a tactical decision" because "counsel did not fulfill their obligation to conduct a thorough investigation of the defendant's background"); *Porter v. McCollum*, 558 U.S. 30, 39-40 (2009) (counsel deficient where he "ignore pertinent avenues for investigation of which he should have been aware").

Moreover, this is not a case like *Wong v. Belmontes*, 558 U.S. 15 (2009), in which counsel adopted a strategy of avoiding presentation of mitigating evidence – including expert testimony about the defendant's mental state – that would have opened the door to "extensive" and "potentially devastating" evidence. *Id*. at 17, 19. Rather, as demonstrated by trial counsel's own affidavits, trial counsel did not effectively use the information and red flags uncovered by the mitigation specialist Cheri Hodson. Nor was a thorough mental health case developed and strategically rejected as evidence by trial counsel's own affidavit: "Neither did I ask Ms. Hodson to prepare a specific social history affidavit or report for provision to a mental health expert or for the jury." A358 at ¶ 7 (Schlesinger); A353-54 at ¶ 7 (Theis). As counsel further explains, Ms. Hodson "looked to me for opinions and feedback about how to develop a penalty phase defense in the most compelling way. Unfortunately, this was my first capital penalty phase, and I just did not have the needed answers for her." A361 at ¶ 11 (Schlesinger).

The Government also argues, citing to *Pole v. Randolph,* 570 F.3d 922, 934 (7th Cir. 2009) that "[w]e assess counsel's work as a whole, and it is the overall deficient performance, rather than a specific failing, that constitutes the ground of relief.". *Response* at 39.  However, Mr. Ra'id is not arguing that a single, distinct error was made. Rather, as detailed in the § 2255 motion, trial counsel's investigation and preparation for the penalty phase was constitutionally deficient. Counsel had substantial red flags that should have prompted the development of mitigating evidence yet failed to ask either of the appointed mental health experts to develop and prepare to present Mr. Ra'id's full traumatic life history and mental health impairments to the jury. Counsel also failed to present any expert testimony that could explain Mr. Ra'id's traumatic life history from a mitigating and mental health perspective and lessen the weight of the Government's case in aggravation.

Even if counsel's deficient performance could be viewed as a "specific failing," the United States Supreme Court has still found *Strickland* error where failure to investigate a single area may result in ineffective assistance. *See*, *e.g.*, *Kimmelman v. Morrison,* 477 U.S. 365 (1986); *Rompilla v. Beard*, 545 U.S. 374, 381 (2005). Counsel in *Rompilla* were ineffective for a particularized failure in their investigation and despite their substantial overall efforts.  The Supreme Court remarked, "This is not a case in which defense counsel simply ignored their obligation to find mitigating evidence." *Id.* Counsel's efforts included consulting their unhelpful and "uninterested" client, interviewing his relatives, and employing "a cadre of three mental health witnesses who were asked to look into Rompilla's mental state as of the time of the offense and his competency to stand trial." *Id.* at 381-82. Despite otherwise thorough preparations, counsel in *Rompilla* were ineffective because they failed to obtain and review the court file on one of the defendant's prior convictions, which would have led them to a wealth of

6

mitigating evidence about his troubled background and impaired mental state as described in a prison file. *Id.* at 383-93. In any event, this is not a case where Mr. Ra'id's trial counsel failed because of a distinct act; thus, the Government's argument is misplaced.

### B.      Prejudice

In a capital sentencing proceeding, where a sentence of death can be imposed only by a unanimous jury, prejudice is established where there is a reasonable probability that at least one juror, after hearing the unpresented mitigating evidence, "would have struck a different balance." *Wiggins*, 539 U.S. at 537; *Porter*, 558 U.S. at 42. Even in highly aggravated cases, the Supreme Court has found prejudice resulting from counsel's failure to investigate and introduce mitigating evidence. *See, e.g., Porter,* 558 U.S. at 32-33 (double murder committed during burglary); *Rompilla*, 545 U.S. at 383 (torture-murder during robbery of bar; petitioner had history of violent felony convictions, including prior conviction for rape and assault); *Williams*, 529 U.S. at 367-68 (petitioner beat elderly man to death with mattock and robbed him; prior convictions for armed robbery, burglary, and assaults on other elderly victims).  In his § 2255 motion (ECF No. 883) and his memorandum of law (ECF No. 976), Mr. Ra'id thoroughly explained the prejudice he suffered from trial counsels' deficient performance. An evidentiary hearing is warranted to allow Mr. Ra'id an opportunity to present the proffered evidence in support of this claim.

The Government's *Response* only serves to bolster the need for a hearing. The Government simply asserts that Mr. Ra'id's proffered mitigation is unconvincing, and then returns to its theme that the mitigation theory presented now by Mr. Ra'id is inconsistent and contradictory to the trial theory.  As explained above, counsel failed to conduct a thorough investigation and therefore could not make a well-reasoned decision to reject a mitigation theory, which would have informed the jury about Mr. Ra'id's traumatic life history. By conceiving strategic reasons on trial counsels' behalf, and ignoring counsel's actual words in their respective

affidavits, the Government places facts in dispute and makes a hearing is necessary. In any event, the files and records of the case do not conclusively show that Mr. Ra'id is entitled to no relief. A hearing is therefore necessary so that this Court can "evaluate the totality of the evidence – both that adduced at trial, and the evidence adduced in the habeas proceeding[s]." *Wiggins*, 539 U.S. at 536 (alteration in original).

## CONCLUSION

For all of the reasons above, those set forth in the *Motion* and *Memorandum of Law*, and based upon the entire record of these proceedings, Mr. Ra'id respectfully requests that this Court grant a hearing in this matter, and thereafter grant relief pursuant to 28 U.S.C. § 2255.

Respectfully submitted,

/s/ Jennifer Chiccarino
JENNIFER CHICCARINO
Assistant Federal Defender
Federal Community Defender Office
for the Eastern District of Pennsylvania
Capital Habeas Unit
601 Walnut Street, Suite 545W
(215) 928-0520
(215) 928-0826 (fax)
Jennifer_Chiccarino@fd.org

Dated: January 31, 2020
    Philadelphia, PA

8

**CERTIFICATE OF SERVICE**

I, JENNIFER CHICCARINO, hereby certify that on this 31st day of January, 2020, I electronically filed the instant pleading with the Clerk of Court using the CM/ECF system which sent notification of such filing to counsel of record.

Respectfully submitted,

/s/ Jennifer Chiccarino
JENNIFER CHICCARINO
Assistant Federal Defender
Federal Community Defender Office
for the Eastern District of Pennsylvania
Capital Habeas Unit
601 Walnut Street, Suite 545W
(215) 928-0520
(215) 928-0826 (fax)
Jennifer_Chiccarino@fd.org