UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | CAUSE NO. 3:02 CR 116 |
| | ) | |
| ODELL CORLEY a/k/a | ) | |
| NASIH RA'ID | ) | |
| | ) | |

## GOVERNMENT'S MOTION FOR DISCOVERY

Comes now the United States of America, by Gary T. Bell, Acting United States Attorney for the Northern District of Indiana, through Assistant United States Attorney Philip C. Benson, and hereby files its discovery request and, in support of this request, states as follows:

### I.    Background – Agreed Status Report

The parties conferred regarding the extent and scope of discovery in this matter and submitted a status report to the court on December 15, 2020. (DE #1008). In that status report, the parties agreed to depositions and the production of all documents related to the penalty phase of the trial for the following expert witnesses:

1. Dr. Mark Cunningham
2. Dr. Richard Dudley Jr.
3. Dr. Jethro Toomer

Additionally, the parties agreed to depositions and the production of all documents related to the penalty phase of the trial, for the following trial counsel:

1. Attorney Jeffery Slessinger
2. Attorney John Theis

The parties further agreed to the production from any and all individuals in possession of documents related to Dr. Bryan Hudson's reports and affidavits prepared for the penalty phase of this case and for the defendant's post-conviction relief petition. This third-party document request is necessary because the defense has represented to the government that Dr. Hudson is now deceased.

Lastly, the parties further agreed that the government should be allowed leave of the Court for early subpoena returns for the above requested documents for on or before January 31, 2020. As part of this Motion, the government requests a court order for these early subpoena returns.

The defendant *did not agree* to the production of documents and depositions for the following lay witnesses who testified in the death penalty phase of the trial:

1. Barbara Aldridge
2. Cameron Corley
3. Kim Aldridge
4. Deborah Aldridge
5. Russell Aldridge
6. Regina Aldridge
7. Ted Williams

8. Kenya Corley
9. Linda Orange

Additionally, the defendant did not agree to the production of documents and depositions for the following additional witnesses who provided evidence used in the penalty phase of the trial or the defendant's § 2255 petition:

1. Cheri Hodson, mitigation investigator
2. Dr. Mack
3. Odell Corley

## II.    *Legal Analysis – Contested Discovery Matters*

1. *Attorney Depositions and Disclosure of Attorney File Information for Both the Guilt and Penalty Phase of the Trial*

Although the parties have agreed to the depositions and the production of all documents related to the mitigation presentation at trial for attorneys Jeffery Slessinger and John Theis, the government further requests that this Court order the defense to disclose their complete files and records concerning their representation of Corley from both the guilt and penalty phases, as the information contained within these documents is necessary for a full and fair adjudication of counsel's performance, which the defendant has placed in issue.

Rule 6 of the Rules Governing Section 2255 Cases authorizes discovery with leave of the district court. Rule 6 permits discovery under the Federal Rules of Criminal Procedure and the Federal Rules of Civil Procedure, for "good cause." For the government to meaningfully respond to Corley's

assertions, it requires access to the documents that informed and reflect trial counsel's contemporaneous impressions and actions. As such, good cause exists for disclosure of counsel's files. *See Strickland v. Washington*, 466 U.S. 668, 689 (1984) (stating that "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time").

Corley has, of course, waived his attorney-client privilege with regard to communications concerning his claims of ineffective assistance at both the guilt and sentencing phases of the trial. The attorney-client privilege is implicitly waived when an individual asserts claims or defenses that place his attorney's advice at issue. *Garcia v. Zenith Elec. Corp.*, 58 F.3d 1171, 1175 n.1 (7th Cir.1995); *Rhone–Polenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir.1994) (citing as examples of such a waiver when a litigant files a malpractice action or asserts reliance on the advice of counsel as an affirmative defense). Implied waiver can be found when a petitioner asserts ineffective assistance of counsel in a habeas case. *United States v. Pinson*, 584 F.3d 972, 978 (10th Cir.2009); *see also Bittaker v. Woodford*, 331 F.3d 715, 716 (9th Cir.2003) ("It has long been the rule in the federal courts that, where a habeas petitioner raises a claim of ineffective assistance of counsel, he waives the attorney-client privilege as to all communications with his

allegedly ineffective lawyer."); *Jenkins v. United States*, No. 09–CV–713, 2010 WL 145850 *1, *2 (E.D.Wis. Jan. 8, 2010).

To a large extent, Corley's agreement to surrender his trial counsel's mitigation files concedes this issue. Although Corley agreed to release only files from his attorneys' mitigation presentation, his petition also contains allegations of ineffective assistance of counsel during the guilt phase. The Defendant's Memorandum of Law In Support of Motion Under 28 U.S.C. § 2255 (DE 976 – Table of Contents pg. i-ii) alleges ineffective assistance of trial counsel in the guilt phase regarding issues of prosecutorial misconduct, improper jury instructions, proof of capital murder elements beyond a reasonable doubt, and multiplicity of charges. Given the breadth of Corley's ineffectiveness claims, which encompass every aspect of the trial proceedings, including proof of the crime itself, proof of the defendant's mental health, and arguments to the jury, the government urges this Court to issue an order pursuant to Federal Rule of Civil Procedure, Rules 26 and 34,[1] requiring Corley to make available for inspection and copying, within 45 days, at the offices of the defendant's current counsel, trial counsel's complete case files relating to their representation of Corley. Any electronically stored information should be produced in its original form.

---

[1] The government relies upon the Rules of Civil Procedure because no Rule of Criminal Procedure provides an ample procedural vehicle for the scope of disclosures that should flow from the defendant in this instance.

Remembering that an implied privilege waiver should be no broader than necessary to ensure fairness, any "winnowing" of trial counsel's file to conform to the scope of the implied waiver "should be done by the attorneys." *United States v. Pinson*, 584 F.3d at 978. Given the breadth of Corley's claims, his waiver of privilege is likewise all-embracing, and he should bear the burden of identifying any documents that allegedly fall outside his implied waiver of privilege for all of the allegations contained in the petition, whether they relate to the guilt or penalty phase of the trial. The alternative would require the government to speculate about the existence of documents in order to seek their disclosure. Such a process would be highly inefficient and undermine the interest in fairness that the implied waiver of privilege is meant to protect.

2. *Disclosure of Expert Witness files and Depositions of Experts*

In support of his claims that trial counsel performed ineffectively, Corley has proffered declarations from asserted experts Dr. Mark Cunningham, Dr. Richard Dudley Jr. and Dr. Jethro Toomer, regarding Corley's life, circumstances, psychological developmental, and other mental health issues related to mitigation evidence. The opinions of those potential witnesses will presumably play a central role in the evidentiary hearing this Court has ordered with respect to the claims of ineffectiveness. In the status report filed with the Court, the parties agreed to the depositions of the these

three witnesses and the production of all documents in their possession related to the mitigation presentation at trial. Accordingly, to the extent not already agreed to by the parties, this Court should order Corley to provide full disclosures of expert testimony as requested below.

The Rules of Civil Procedure require a party who intends to call an expert witness to provide a written report outlining the opinions the expert will offer, the data considered by the expert in forming those opinions, the expert's qualifications, the cases in which the expert has recently testified, and the compensation to be paid to the expert.[2]  Fed. R. Civ. P. 26(a)(2)(B). Such disclosures provide opposing parties with a reasonable opportunity to prepare effective cross-examination and to arrange for their own experts, as needed. *ClearOne Communications, Inc. v. Biamp Systems*, 653 F.3d 1163, 1176 (10th Cir. 2011).

Presently, it appears that Corley will present testimony from these three identified expert witnesses. As to each of these three witnesses, good cause exists for disclosures under Rule 26(b)(2), which will permit the government to prepare cross-examination and identify experts that the

---

[2]  The Rules of Civil Procedure appear to provide the only procedural vehicle through which the government can obtain expert disclosures, because the defense has not requested disclosures under Federal Rule of Criminal Procedure, Rule 16(a)(1)(G) or given notice under Rule 12.2(b). *Cf*. Fed. R. Crim. Pro. 16(b)(1)(C).

government may need to retain. *Reese v. Herbert*, 527 F.3d 1253, 1265 (11th Cir.2008).

For the government to fully and fairly prepare for the evidentiary hearing, this Court should order Corley to make all of the above requested disclosures within 45 days, in addition to the documents and information in he has previously agreed to disclose.

Additionally, to permit the government to fully prepare for the hearing, this Court should order Corley to provide a witness list under the procedure set forth in Federal Rule of Civil Procedure 26(a)(3).

### 3. *Depositions of Additional Witnesses*

In support of his claims of ineffective assistance, Corley submitted affidavits by experts that are replete with references to, and information from Corley and several of his family members, many of whom previously testified in the penalty phase of trial. The affidavits also refer to information gathered by Cheryl Hodson, a Federal Public Defender investigator. Ms. Hodson's affidavit, submitted by Corley, indicates that she spoke with family members and obtained information regarding Corley's family life. This information partially formed the basis of the defense experts opinions related to the efficacy of particular mitigation evidence. Much of the information gathered by Ms. Hodson and the defense experts conflicts with testimony provided by family members at trial.

Depositions of these lay witnesses will lead to the discovery of evidence and facilitate potentially dispositive motions that could narrow the scope of the evidentiary hearing. *See generally Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Good cause for the proposed depositions exists: they will permit the government to fully and fairly prepare for the hearing and to seek summary judgment as to claims amenable to decision without evidentiary development. Given the importance of those witnesses to the claims of ineffectiveness, the government seeks to depose them, pursuant to Federal Rule of Civil Procedure 26(b)(4), and thereby determine the scope, bases, and reliability of their opinions, observations, and recollections.

Because the informed tactics of trial counsel lies at the heart of the ineffective assistance claims, Corley's own conduct and statements will necessarily shed light on the actions of  the defense's experts and the trial attorneys. As such, the government also seeks leave to depose Odell Corley. *See* Fed. R. Civ. Pro. 30(a)(2)(B) (requiring leave to depose an incarcerated witness).

Without discovery, the government's inability to explore, investigate, and challenge the basis of the information gathered by Corley's experts and the investigator, Cheryl Hodson, will effectively neuter its efforts to determine the veracity of his claims. Without the opportunity to engage in full discovery of the witnesses upon whom Corley's experts premise their

opinions, the government cannot meaningfully challenge Corley's current assertions. Likewise, the government should have the opportunity to explore the recollections and opinions of trial witnesses whose testimony was inconsistent with assertions made in support of the § 2255 motion and its underlying affidavits.

Therefore, this Court should permit the government to depose Odell Corley, Federal Public Defender Investigator Cheryl Hodson, and the following witnesses who have either provided information to Corley for his instant motion or testified in the penalty phase of trial.

1. Barbara Aldridge
2. Cameron Corley
3. Kim Aldridge
4. Deborah Aldridge
5. Russell Aldridge
6. Regina Aldridge
7. Ted Williams
8. Kenya Corley
9. Linda Orange

Additionally, these witnesses, along with Ms. Hodson, should be ordered to provide all documents related to any information obtained as part of his investigation or provided to the defense.

### 4. Mental Health Examination of Odell Corley

Corley asserts as a basis for his ineffectiveness claims that trial counsel inadequately investigated and presented evidence of his mental health. In support of those arguments, Corley proffered declarations from several expert

witnesses attesting to his past and present mental condition. (*See* DE 924 and 930-1 – Affidavits of Dr. Toomer, Dr. Dudley, and Dr. Cunningham.)  The government seeks an opportunity to perform a mental health evaluation of Corley.

Because Corley asserts that his current mental health informs his prior condition and, by extension, the reasonableness of trial counsel's conduct, good cause exists for the government to evaluate his present mental condition. Federal Rule of Civil Procedure 35(a)(1) authorizes courts to order a party whose mental condition is in controversy to submit to a mental examination by a suitably licensed or certified examiner. In this case, Corley has placed in controversy his mental health as diagnosed by his three experts. Corley emphasizes his psychological and neuropsychological conditions, claiming some type of brain trauma from being dropped on his head during his youth. For the government to assess the reliability and veracity of these reports, it should have the opportunity to evaluate Corley's mental health. Accordingly, the government proposes that within the next 180 days, qualified professionals will perform a neuropsychological evaluation and a psychiatric evaluation of Corley at the Special Confinement Unit in Terre Haute, where the defendant is currently housed by the Bureau of Prisons. The evaluation will be limited to an assessment of Corley's mental

health, as it relates to his assertions of mental illness and organic brain damage at the time he committed the instant crime.

   5. *Issuance of Subpoenas Duces Tecum*

Corley asserts that his attorneys inadequately presented evidence of his mental health and social history. In support of those arguments, Corley relies, directly and indirectly, upon his personal history – including aspects of his education, employment, family life, and medical history – and the opinions of several expert witnesses. In addition to the issuance of Subpoenas Duces Tecum by the government to the above identified witnesses, this Court should also permit the government to subpoena documents relating to Corley's life history and the files of various witnesses, including but not limited to trial counsel and the defense's experts.

Federal Rules of Civil Procedures 34(c) and 45 permit a litigant to subpoena documents in the possession of a non-party. Good cause exists to permit the government to subpoena documents related to Corley's personal history. Corley himself, has relied upon details of his life to support his claims. Corley's expert's relied on interviews that suggest trial counsel should have presented more coherent social history evidence, including school records. Accordingly, Corley's conduct and performance at work, at school, and in custody bear on the reliability of those opinions and on his mental health diagnoses, which also form the core of several ineffective assistance of

counsel claims. Of course, his medical record also informs the reliability of his mental health diagnoses. Finally, prior legal actions that recount his conduct, and that of his family members, provide a reliable source of evidence about Corley's mental health and social history, though some of that material may not be publicly available.

Given the significance of life history records to Corley's claims, the Court should permit the government to subpoena records from third parties who had contact with Corley, including but not limited to any United States or State governmental records, all organizations and individuals who employed Corley in a paid or unpaid capacity (for all records of his employment); all schools that Corley attended (for all of his academic, administrative, behavioral and counseling records); all judicial and administrative courts in which Corley has been a litigant or witness (for any sealed transcripts of his testimony or any non-public records related to litigation in which he was a party or witness); all penal and detention facilities in which Corley has been an inmate (for all records of his custody), all medical professionals who have treated or diagnosed Corley (for all of his medical records), all mental health professionals who have treated or diagnosed Corley (for all of his mental health records). To the extent any such records are privileged under state or federal law, this Court should order

Corley to execute the waivers necessary for the government to obtain the material.

As noted, Corley has relied upon the opinions of several medical and mental health experts as the bases for his claims of ineffective assistance of counsel. To permit the government to test the veracity and reliability of the experts' testimony, it should have the opportunity to subpoena the documents that Corley's experts considered in forming those opinions. Accordingly, good cause exists for the government to issue subpoenas for such material, including any notes, interview notes, raw test data, normative data, diagnostic criteria, and documents provided by the defendant or his attorneys for consideration  in forming the experts' opinions.

As argued above, good cause exists for the court to permit the government to obtain counsel's file, as it presumably contains evidence of the trial lawyers' contemporaneous impressions and decision making.

### 6. Issuance of Interrogatories

As previously noted, Corley has relied extensively on his personal history as a basis for his claims of mental illness, which in turn animate claims of ineffective assistance of counsel. Of course, Corley is the person best informed about own life, and his current attorneys have evidently expended great effort in documenting that history.

Parties may propound interrogatories broadly related to claims for relief. *See* Fed. R. Civ. Pro. 26(b) & 33. The need for the government to investigate Corley's personal history provides good cause for it to propound interrogatories to him. Through these interrogatories, the government aims to obtain information with which it can verify factual assertions made by the defense and its experts and determine whether expert opinions have been founded on complete information. The government's interrogatories will be reasonably calculated to lead to the discovery of other information or to confirm the absence of information. Specifically, the interrogatories will seek to determine the identities of additional medical and mental health professionals who have treated or diagnosed Corley, the identities of people with whom Corley has had intimate relationships, the identities of any employers Corley has worked for, the identities of any schools Corley has attended, and the identities of any psychoactive agents he has ingested. Additionally, the government seeks to learn of contacts Corley may have had with police and child protective agencies, and to determine what civil or criminal litigation he has participated in as a witness or litigant.

## III.    Conclusion

Based on the foregoing reasoning and authority, the government urges this court to grant the proposed discovery order.

Respectfully submitted,

GARY T. BELL
ACTING UNITED STATES ATTORNEY

By:    s/ *Philip C. Benson*

Philip C. Benson
Assistant United States Attorney

## *Certificate of Service*

I hereby certify that on December 30, 2020, I filed the GOVERNMENT'S MOTION FOR DISCOVERY with the Clerk of the Court; such filing made through the CM/ECF filing system to all parties of record.

s/ *Philip C. Benson*

Philip C. Benson
Assistant United States Attorney