## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | No. 3:02-CR-116 |
| Respondent, | : | |
| | : | |
| **v.** | : | **CAPITAL 2255** |
| | : | **PROCEEDINGS** |
| **ODELL CORLEY, a/k/a** | : | |
| **NASIH RA'ID,** | : | Hon. JON E. DeGUILIO |
| Movant. | : | Chief Judge |
| | : | |

## MOVANT RA'ID'S RESPONSE IN PARTIAL OPPOSITION
## TO THE GOVERNMENT'S DISCOVERY MOTION

Movant, Nasih Ra'id, through counsel, respectfully opposes the Government's request for discovery. Movant states as follows:

### A.    Introduction and relevant background

On January 19, 2010, Movant Nasih Ra'id filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Motion") (ECF No. 883). On June 18, 2018, Mr. Ra'id filed his Memorandum of Law in support of his § 2255 motion (ECF No. 976). The Government filed its Response in Opposition on October 1, 2019 ("Response") (ECF No. 986).  At a status conference held on August 18, 2020, this Court scheduled an evidentiary hearing on Claim 7 of Mr. Ra'id's § 2255 motion for December 7-9, 2020. (ECF No. 998). Both parties informed the Court that they were ready to move forward with the evidentiary hearing.

On November 9, 2020, the Government filed a discovery motion and requested a continuance of the scheduled evidentiary hearing. (ECF No. 1002).  On November 12, 2020, this Court held a status hearing regarding the Government's motion. At that hearing, the parties agreed to confer regarding discovery matters. Counsel for Mr. Ra'id did not object to the Government's request for continuance. Thereafter the parties conferred and filed a joint status report on December 15, 2020. (ECF No. 1008). The Government filed a subsequent discovery motion on December 30, 2020. Mr. Ra'id now responds to that discovery motion.

**B.      Relevant law regarding discovery in § 2255 proceedings**

Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts ("§ 2255 Rules") provides, in relevant part:

> (a) Leave of Court Required. A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with practices and principles of law. . . .
>
> (b) Requesting Discovery. A party requesting discovery must provide reasons for the request.

"A respondent seeking discovery is subject to the same limitations as a petitioner, because Rule 6 applies to both sides in a habeas case. Before determining whether discovery is warranted, the Court must first identify the essential elements of the claim on which discovery is sought. The burden of demonstrating the materiality of the information requested is on the moving party."

*Shank v. Mitchell*, No. 2:00-CV-17, 2010 U.S. Dist. LEXIS 94572, at *11–12, (S.D. Ohio Aug. 23, 2010) (citations omitted).

Although Rule 6 allows for discovery in a § 2255 case, "such discovery is intended to be narrow and focused. The rule requires that the movant include specific requests and interrogatories. . . . Moreover, good cause should exist for each of the requests." *Walton v. United States*, No. 12-C-1187, 2013 WL 1975676, at *11 (E.D. Wis. May 13, 2013). "The 'good cause' standard set forth in Rule 6 restrains a party litigant from unbridled entitlement to discovery." *Lott v. Bradshaw*, No. 1:04-CV-822, 2005 WL 3741492, at *2 (N.D. Ohio Mar. 29, 2005). A party cannot use discovery for "fishing expeditions to investigate mere speculation." *Calderon v. United States Dist. Court*, 98 F.3d 1102, 1106 (9th Cir. 1996). "Conclusory allegations are not enough to warrant discovery under Rule 6." *Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994).

### C. The Government's discovery requests lack good cause

#### 1. The trial attorney file

In its initial discovery motion, the Government limited its request to the portions of the trial attorney file relevant to the only claim to which this Court granted a hearing, specifically, ineffective assistance of counsel at Mr. Ra'id's penalty phase. In fact, the Government specified that "[t]he court should recognize a waiver no broader than necessary to ensure the fairness of the proceedings. In

other words, an implied waiver of the privilege supports disclosure of only those communications specific to the claim." (ECF No. 1002 at 6) (citations omitted). Moreover, the Government asserted: "[u]nless Corley wishes to withdraw his incompetence of counsel claim, there can be no dispute that he has waived any attorney-client and work-product privilege related to the decision to present limited mitigation evidence in the death penalty phase." *Id*. at 9. Additionally, the Government averred that "[t]his discovery, and the requested depositions, are fully necessary to properly investigate and defend the incompetency of counsel allegations alleged by Corley and the validity of the specific affidavits prepared in this case." *Id*. at 11.

At no point in its initial discovery motion, during the status conference with this Court, or in conferring with undersigned counsel, did the Government ever mention requesting the trial attorney file beyond the portions relevant to the penalty phase claim. Now, for the first time, the Government seeks "for inspection and copying, within 45 days, at the offices of the defendant's current counsel, trial counsel's complete case files relating to their representation of Corley." (ECF No. 1010 at 5). The Government's overbroad request should be denied.

In agreeing to disclose redacted portions of the trial attorney file relevant to the only claim for which this Court granted a hearing, undersigned counsel relied on the request made in the Government's discovery motion. Moreover, in not

objecting to a continuance for the already scheduled evidentiary hearing, a hearing the defense was prepared to move forward on December 7, 2020, undersigned counsel relied on the arguments the Government made at the status conference on November 12, 2020. The Government's new request for the entire trial attorney file is an unfair surprise, unsupported by the good cause, and wholly irrelevant to the only claim relevant to the evidentiary hearing.

The Government's discovery request for the entire trial attorney file should be denied because it fails to establish good cause. The Government simply points to the table of contents from Mr. Ra'id's memorandum of law and asserts that these claims "encompass every aspect of the trial proceedings." (ECF No. 1010 at 5). The Government demands the entire file but offers no explanation why it has good cause to inspect the trial attorney file for discovery. The majority of the remaining claims raise allegations of ineffective assistance of counsel that are irrelevant to the claim for which this Court has granted a hearing, while others rely entirely on new evidence that was unavailable at the time of Mr. Ra'id's trial. To the extent that Mr. Ra'id waived privilege with respect to information within the trial attorney files, that waiver applies only "to the extent necessary to properly litigate and defend the ineffective assistance of counsel claims. The implied waiver must be narrowly construed." *Shank,* 2010 U.S. Dist. LEXIS 94572, at *15–16 (citations omitted).

The Government's request for the entire, unredacted trial file is unfocused, overly broad, and irrelevant to the evidentiary hearing. Other than conclusory assertions, the Government does not make any specific showing of good cause regarding what it believes exists within the trial attorney file relative to the remaining claims. Instead, the Government's request is an improper fishing expedition, exactly the type of unrestrained discovery request Rule 6 aims to prevent. *See Lott*,  2005 WL 3741492, at *2 ("The 'good cause' standard set forth in Rule 6 restrains a party litigant from unbridled entitlement to discovery."). The Government's request should be denied.

### 2.    Depositions of other witnesses

The Government requests depositions of the mitigation specialist hired by trial counsel, Cheri Hodson, as well as depositions of nine family members who testified for Mr. Ra'id at his penalty phase.  Finally, the Government seeks to depose the movant, Mr. Ra'id.  Because the Government fails to establish good cause, the requested depositions should be denied.

The Government asserts it has good cause in seeking this discovery: "[d]epositions of these lay witnesses will lead to the discovery of evidence and facilitate potentially dispositive motions that could narrow the scope of the evidentiary hearing (citation omitted). Good cause for the proposed depositions exists: they will permit the government to fully and fairly prepare for the hearing

and to seek summary judgment as to claims amenable to decision without evidentiary development." (ECF No. 1010 at 9).  The Government's argument is without merit.

Firstly, an evidentiary hearing has already been granted by the Court on a single issue; therefore, there will be no narrowing of claims for evidentiary development. Secondly, the Government does not know of or identify what information it hopes to obtain. This, again, is a classic fishing expedition excluded by Rule 6.  The Government claims it "should have the opportunity to explore the recollections and opinions of trial witnesses whose testimony was inconsistent with assertions made in support of the § 2255 motion and its underlying affidavits." *Id.* But the Government's bald assertion does not identify any inconsistency.

The Government also avers that it wants to "explore the recollections" of these trial witnesses, but these family witnesses testified at the penalty phase and were subject to cross-examination. The Government already had the opportunity to ask them relevant questions about Mr. Ra'id's life history. Now, the Government is simply fishing, hoping to find inconsistent information regarding witnesses who will not be testifying at the evidentiary hearing. To the extent that Mr. Ra'id's experts are relying upon information obtained from these family members, the Government will have a full opportunity to cross-examine these experts at the evidentiary hearing. The Government's overbroad request should be rejected.

The Government's request to depose mitigation specialist Cheri Hodson is likewise without good cause. Ms. Hodson will not be testifying at the evidentiary hearing. To the extent that Ms. Hodson is aware of relevant information pertaining to the ineffective assistance of counsel claims, an extensive affidavit from Ms. Hodson has already been submitted in Mr. Ra'id appendix to his § 2255 motion. Most critically, Ms. Hodson did not make any trial decisions regarding which witnesses to call or any supposed defense strategy.  The claim before this Court is ineffective assistance of trial counsel, not ineffective assistance of a mitigation specialist. The lawyers who made or did not make the relevant decisions at Mr. Ra'id's trial will be called to testify and subject to cross-examination.

The Government also seeks to depose and/or issue interrogatories to the movant, Mr. Ra'id. This extraordinary request should be denied for lack of good cause. The Government avers that "Corley's own conduct and statements will necessarily shed light on the actions of the defense's experts and the trial attorneys." (ECF No. 1010 at 9).  The Government's speculation is not based in fact. Moreover, the Government will be able to cross-examine trial counsel about their decision-making. If Mr. Ra'id's own conduct could "shed light" on the trial attorneys' actions, that is something with which to cross-examine trial counsel, not Mr. Ra'id.

In *Wessinger v. Cain*, No. 04-637-JJB-SCR, 2009 WL 111735 (M.D. La. Jan. 15, 2009), a case the court denied a similar government motion to depose the petitioner. The court reasoned that the government could not establish good cause for the deposition because:

> [N]owhere in the respondent's answer to the petitioner's ineffective assistance of counsel claims is there any indication that the petitioner's trial counsel based any strategic trial decision on information provided by the petitioner. Nor does the answer assert, or even infer, that any of trial counsel's strategic trial decisions were made after consulting with the petitioner, informing him of counsel's proposed course of action, or communicating with the petitioner in any way.

*Wessinger*, 2009 WL 111735, at \*2. The same reasoning applies here.

Further, Mr. Ra'id retains his Fifth Amendment rights in this proceeding. The right against self-incrimination is "accorded liberal construction" and may be asserted whenever a person "has reasonable cause to apprehend danger" from answering the government's questions. *Hoffman v. United States*, 341 U.S. 479, 486 (1951). "Reasonable cause" exists whenever the person's statements possibly may be used against him in a future prosecution, even where that possibility is "remote" or "speculative" or "slight." *See, e.g.*, *Resnover v. Pearson*, 965 F.2d 1453, 1462 (7th Cir. 1992) ("We cannot agree that a witness' constitutional privilege against self-incrimination depends upon a judge's prediction of the likelihood of prosecution."); *United States v. Sharp*, 920 F.2d 1167, 1171 (4th Cir. 1990) ("[O]nce incriminating potential is found to exist, courts should not engage

9

in raw speculation as to whether the government will actually prosecute[.]”);

*United States v. Cuthel*, 903 F.2d 1381, 1384 (11th Cir. 1990) (witnesses can

properly invoke privilege “even if the risk of prosecution is remote”).

Mr. Ra’id’s death sentences and/or convictions may be vacated and he may

face retrial at some point in the future. Under these circumstances, Mr. Ra’id’ “has

reasonable cause to apprehend danger” from being deposed by the government,

and his right against self-incrimination thus attaches. *See Hoffman*, 341 U.S. at

486. Because Mr. Ra’id is not expected to testify at the hearing, and because his

Fifth Amendment rights attach, the Government cannot show good cause for its

requested deposition.

### D.    Mental health examination of Mr. Ra’id

The Government avers that “[b]ecause Corley asserts that his current mental

health informs his prior condition and, by extension, the reasonableness of trial

counsel’s conduct, good cause exists for the government to evaluate his present

mental condition. . . .  For the government to assess the reliability and veracity of

these reports, it should have the opportunity to evaluate Corley’s mental health.

Accordingly, the government proposes that within the next 180 days, qualified

professionals will perform a neuropsychological evaluation and a psychiatric

evaluation of Corley at the Special Confinement Unit in Terre Haute.” (ECF No.

1010 at 11). The Government fails to establish good cause and their request should be denied.

Although Mr. Ra'id's mental health is at issue, the Government's request makes no mention whatsoever that Mr. Ra'id has already been extensively evaluated by Government experts prior to his trial. In 2004, the Government had Mr. Ra'id evaluated by psychiatrist James K. Knoll M.D., as well as neuropsychologist Diane Goldstein, Ph.D. The Government's experts not only evaluated Mr. Ra'id, they also reviewed wide-ranging background records including school, military, probation, department of corrections, court records, and prior mental health reports including from trial defense expert Dr. Bryan Hudson. The Government makes no showing of good cause why these multiple, extensive evaluations are not sufficient for purposes of the evidentiary hearing. Moreover, Mr. Ra'id discussed his upbringing with the Government experts.

Finally, the Government specifically informed this Court at the prior status hearing that it was not calling any witnesses at the evidentiary hearing.  Beyond not demonstrating good cause for this discovery, it is unclear why new evaluations are necessary for experts, yet unnamed, who will not be testifying at the hearing. Nor has the Government explained its delay in seeking leave of the Court to conduct expert mental health evaluations. The Government's conclusory assertions

that new evaluations are necessary at this belated juncture are insufficient to demonstrate good cause.

### E.       Issuance of subpoenas duces tecum

The Government makes unspecific requests to subpoena documents related to Mr. Ra'id's life history. The Government fails to mention that it already possesses most, if not all of these records. Prior to trial, the Government provided its mental health experts with extensive records from Mr. Ra'id's life, including school, military, probation, and prison records. Because Mr. Ra'id has been incarcerated since the time of his trial, there are no new records for the Government to subpoena.  The Government also seeks to subpoena records from trial counsel and the defense mental health experts. However, trial counsel turned over their entire file to current counsel. Issuing a subpoena to trial counsel is unnecessary because trial counsel no longer possess these records. With respect to the defense mental health experts, current counsel has already agreed to disclose the records that the mental health experts relied upon. Again, issuing subpoenas to the mental health experts is unnecessary. With respect to other "documents relating to Corley's life history and the files of various witnesses," *id*. at 12, these vague references are speculative at best and insufficient to demonstrate good cause under Rule 6.

For all of the reasons above, Mr. Ra'id respectfully requests that this Court

deny the Government's overly broad request for discovery.

Respectfully submitted,


/s/ Leor Veleanu
LEOR VELEANU
JENNIFER CHICCARINO
AYANNA WILLIAMS
Assistant Federal Defender
Federal Community Defender Office
for the Eastern District of Pennsylvania
Capital Habeas Unit
601 Walnut Street, Suite 545W
(215) 928-0520
(215) 928-0826 (fax)
Leor_Veleanu@fd.org



Dated: January 13, 2021
Philadelphia, PA

## CERTIFICATE OF SERVICE

I, Leor Veleanu, hereby certify that on this 13th day of January, 2021, I electronically filed this pleading with the Clerk of Court using the CM/ECF system which sent notification of such filing to counsel of record.

Respectfully submitted,


/s/ Leor Veleanu
Leor Veleanu
Assistant Federal Defender
Federal Community Defender Office
for the Eastern District of Pennsylvania
Capital Habeas Unit
601 Walnut Street, Suite 545W
(215) 928-0520
(215) 928-0826 (fax)
Leor_Veleanu@fd.org@fd.org